Alan ZURLNICK, Acting Regional Direc-
tor of the Fourth Region of the Nation-
al Labor Relations Board, for and on be-
half of the National Labor Relations
Board, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
98, Respondent.

Civ. A. No. 73-1354.

United States District Court,
E. D. Pennsylvania.

July 18, 1973.

Robert D. Kaplan, National Labor Re-
lations Board, Region 4, Philadelphia,
Pa., for petitioner.

Bernard N. Katz, Philadelphia, Pa.,
for respondent.

FINDINGS OF FACT, DISCUSSION,
CONCLUSIONS OF LAW
AND ORDER

CLIFFORD SCOTT GREEN, District
Judge.

Alan Zurlnick, the Acting Regional
Director of the Fourth Region of the
National Labor Relations Board (herein-
after referred to as "Petitioner") has
petitioned the Court, pursuant to Sec-
tion 10($l$) of the National Labor Rela-
tions Act, as amended, (61 Stat. 149; 73
Stat. 544; 29 U.S.C. § 160($l$); (herein-
after referred to as "The Act"), for a
temporary injunction. Petitioner, act-
ing on charges filed by the Communica-
tions Workers of America (hereinafter
referred to as "CWA") seeks to enjoin
the International Brotherhood of Elec-
trical Workers, Local 98, respondent
herein, from continuing certain alleged
conduct and practices said to be unfair
labor practices within the meaning of §
8(b)(4)(i) and (ii), subparagraph (D),
of the Act.[1]

---

1. Section 8(b)(4)(i) and (ii), subpara-
graph (D), provide that:
"(b) It shall be an unfair labor prac-
tice for a labor organization or its
agents—
(4)(i) to engage in, or to induce or
encourage any individual employed by
any person engaged in commerce or in
an industry affecting commerce to en-
gage in, a strike or a refusal in the
course of his employment to use, manu-
facture, process, transport, or otherwise
handle or work on any goods, articles,
materials, or commodities or to perform
any services; or (ii) to threaten,
coerce, or restrain any person engaged

Respondent, by its answer, denies that it is engaged in any unfair labor practices, and specifically denies any attempt to require Intercommunications Services Inc. (hereinafter referred to as "ICS"), the charging party's employer, to transfer to it the telephone installation work at the building under construction for the Pennsylvania College of Podiatric Medicine; said work is presently assigned to employees represented by CWA. In addition to denying that it is engaged in any unfair labor practice, respondent alleges that its sole objective in picketing the job site is to protest the destruction of area wage standards by the wage scale presently being paid by ICS.

Hearings were held on June 28 and July 5, 1973, and full opportunity was afforded the parties to be heard, to examine and cross-examine witnesses, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments and briefs of counsel. Upon consideration of the entire record, the Court makes the following:

## FINDINGS OF FACT

1. Petitioner is Acting Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board. (Admitted by answer of respondent.)

2. On or about May 11, 1973, Communications Workers of America (herein called CWA), pursuant to the provisions of the Act, filed a charge with the Board alleging that International Brotherhood of Electrical Workers, Local 98, (herein called respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within

in commerce or in an industry affecting commerce, where in either case an object thereof is:

\*     \*     \*     \*     \*

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class

the meaning of Section 8(b)(4)(i) and (ii), subparagraph (D), of the Act. (Admitted by Answer of respondent.)

3. The aforesaid charge was referred to the petitioner as Acting Regional Director of the Fourth Region of the Board. (Admitted by Answer of respondent.)

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent and CWA are unincorporated associations, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning greivances, labor disputes, wages, rates of pay, hours of employment or conditions of work. (Admitted by Answer of respondent.)

(b) Respondent maintains its principal office in Philadelphia, Pennsylvania, and at all times material herein, said respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interest of its employee members. (Admitted by Answer of respondent.)

(c) At all times material herein, James McDevitt has been a business agent of respondent and has acted as an agent of respondent.

(d) At all times material herein, Mitchell Tubin has been a steward of respondent and has acted as an agent of respondent.

(e) Inter Communications Services, Inc. (herein called ICS), is a New York corporation with principal offices located in Newburgh, New York. At all times material herein, ICS has been engaged in installing telephone equipment and systems. Within the past twelve months, in the operation of its business, ICS has performed

rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: . . ."

services outside the State of New York valued in excess of $50,000. (Admitted by Answer of respondent.)

(f) At all times material herein, ICS has been engaged, pursuant to a contract with Arcata Communications Co., in the installation of telephone equipment and systems at the Pennsylvania College of Podiatric Medicine building (herein called the College building) presently under construction at 8th and Race Streets, Philadelphia, Pennsylvania. (Admitted by Answer of respondent.)

(g) On or about April 16, 1973, and at all times material herein, ICS assigned the work of installing telephone equipment and systems at the College building to its employees, who are represented for the purpose of collective bargaining by CWA. (Admitted by Answer of respondent.)

(h) At no time material herein has respondent been certified by the Board as the collective bargaining representative of any of ICS' employees engaged in the work referred to in Findings of Fact 4(g), above, nor has the Board issued an order directing ICS to bargain with respondent as the representative of said employees. (Admitted by Answer of respondent.)

(i) Since on or about April 17, 1973, respondent engaged in the following conduct:

(1) On or about April 17, 1973, threatened to engage in a work stoppage or picketing at the College building.

(2) On or about April 23, 1973, picketed at the College building.

(3) On or about April 25, 1973, threatened to engage in a work stoppage or picketing at the College building.

(4) On or about April 26, 1973, picketed at the College building; individuals represented by respondent and employed by electrical contractor E. C. Ernst Co., and individuals employed by Van Corr, Inc., Energy Design and Construction Co., James F. Oakley Co., and by other contractors refused to go to work at the College building.

(j) By the acts and conduct set forth in Findings of Fact 4(i)(2) and (4), above, respondent has induced and encouraged individuals employed by E. C. Ernst Co., Van Corr, Inc., Energey Design and Construction Co., James F. Oakley Company, ICS and other persons engaged in commerce or in industries affecting commerce to engage in a strike or a refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services.

(k) By the acts and conduct set forth in Findings of Fact 4(i), respondent has threatened, coerced and restrained Pennsylvania College of Podiatric Medicine, ICS, E. C. Ernst Co., Van Corr, Inc., Energy Design and Construction Co., James F. Oakley Company, and other persons engaged in commerce or in industries affecting commerce.

(l) An object of the acts and conduct of respondent set forth in Findings of Fact 4(i), (j) and (k), above, was and is to force or require ICS to assign the work referred to in Findings of Fact 4(g), above, to employees who are members of, or represented by, respondent rather than to employees who are members of, or represented by, CWA.

5. The wage rates paid by the employer of the charging party to its employees are substantially less than the wage rates enjoyed by Respondent union's members when they perform similar work for employers with whom they contract.

6. Respondent sent letters to all parties, stating that the sole objective of its action was to protect the wage levels in effect between ICS and CWA.

7. It may be fairly anticipated that, unless enjoined, respondent will continue

or repeat the acts and conduct hereinabove set forth or similar or like acts and conduct in violation of Section 8(b)(4)(i)(ii), subparagraph (D), of the Act. It is therefore essential, appropriate, just and proper, for the purpose of effectuating the policies of the Act, and in accordance with the provisions of Section 10(*l*) thereof, that, pending the final disposition of the matters involved herein pending before the Board, respondent be enjoined and restrained from the commission of the acts and conduct above alleged, similar acts and conduct, or repetitions thereof.

## DISCUSSION

The principal issue in this proceeding is whether the conduct of respondent in picketing and causing a work stoppage, as set out in the Findings of Fact, had as an objective compelling the reassignment of the telephone installation work from employees represented by Communications Workers of America to employees represented by Respondent. Respondent vigorously asserts that its sole objective in picketing is to protest the destruction of wage standards and points to two letters by Counsel for Respondent addressed to the employer, ICS, setting forth the maintenance of wage standards as the sole objective of any picketing.

■ The Court has found as a fact that said letters were indeed sent to ICS on the 17th and 30th of April, 1973. While the letters are evidence to be considered, there is other evidence of record which contradicts the self-serving declarations contained in the letter. The on site confrontations between the CWA represented employees and respondent produced statements by James McDevitt, business agent of Respondent, and Mitchell Tubin, a steward of Respondent, clearly indicating that while the avowed purpose of Respondent was to maintain wage standards, the real purpose was to obtain a transfer of the work to employees represented by Respondent. Thus, on April 16, 1973, when the CWA workers first appeared, Tubin stated "if it's your

work you can do it, but if it's my work, I think I should do it." The substance of this statement was repeated on several occasions by Tubin. On April 17, 1973, McDevitt told CWA people that he thought it was electrical people's work, but that any action taken would not proceed on that basis, but on protecting area wage standards. The statements by the business agent and steward are admissible into evidence to show the real objective of respondent's actions even though the statements were not expressly authorized. See, N. L. R. B. v. Highway Truckdrivers & Helpers, Local No. 107, 300 F.2d 317 (3rd Cir. 1962); N. L. R. B. v. Brewery & Beer Distributor Drivers, Helpers & Platform Men, Local 830, International Brotherhood of Teamsters, 281 F.2d 319 (3rd Cir. 1960); Schauffler v. Highway Truck Drivers & Helpers, Local 107, 230 F.2d 7 (3rd Cir. 1956); Samoff v. Highway Truck Drivers and Helpers, Local 107, 355 F.Supp. 505 (E.D.Pa.1973).

■ Thus, notwithstanding counsel's letters and the picket signs stating that the picketing had as a sole objective the protection of area wage standards, there is substantial evidence that the dispute is in fact jurisdictional.

It is not for the Distirct Court to determine the merits of the dispute in a 10(*l*) application for a temporary injunction. To be entitled to a temporary injunction, "[t]he Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present." Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182, 187 (3rd Cir. 1961).

■ Respondent also argues that even if the elements of an unfair labor practice are present, a temporary injunction should not issue because "it is necessary for the district court to evaluate on the basis of the general equitable approach, whether the facts appropriately interpreted demonstrate a reasonable probability that the unfair labor prac-

tice will be sustained." We disagree. All of the cases decided in this circuit require the district court to issue the temporary injunction if there is reasonable cause to believe that the elements of an unfair labor practice are present. Under such circumstances it is just and proper to issue the injunction, and maintain the status quo pending final adjudication by the Board. Samoff v. Building & Const. Tr. Counc. of Philadelphia & V., 475 F.2d 203 (3rd Cir. 1973.)

The evidence clearly establishes reasonable cause to believe that the elements of an unfair labor practice are present and accordingly we grant petitioner's request for a temporary injunction.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10($l$) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has reasonable cause to believe that:

(a) Respondent International Brotherhood of Electrical Workers, Local 98, is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act.

(b) Inter Communications Services, Inc., is an employer engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Sections 8(b)(4)(i) and (ii), subparagraph (D), of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1 thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, International Brotherhood of Electrical Workers, Local 98, and its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation or repetition of the acts and conduct set forth in Findings of Fact 4(i), above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.